UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ENTERGY THERMAL, LLC**                                              **CIVIL ACTION**

**VERSUS**                                                                              **NO. 10-2728**

**ROCKY MARTIN D/B/A**                                             **SECTION "K"(2)**
**TEXAS SURPLUS**

## ORDER AND OPINION

Before the Court is the "Motion to Dismiss and/or Motion to Stay" filed on behalf of defendant Rocky Martin. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, **DENIES** the motion.

### BACKGROUND

Entergy Thermal, LLC ("Entergy") entered into a "Field Services Contract" with Texas Surplus; Rocky Martin signed the contract on behalf of Texas Surplus. The contract provided that Texas Surplus would "[d]emo all c/w and condensate piping. Remove all pumps and electrical panels dealing with old chillers" at the Charity Hospital Boiler Plant located at 422 Freret Street in New Orleans, Louisiana. Doc. 12, Exhibit A. The contract also provided that:

> To the fullest extent allowed by law, Contractor shall indemnify and hold harmless the Entergy Companies, their affiliated and associated companies, and their agents, officers, directors, shareholders, and employees for any liability, loss, cost, claims, including attorney's fees raising from the performance of or failure to perform this contract by Contractor, <u>REGARDLESS OF ANY NEGLIGENCE ATTRIBUTABLE TO THE ENTERGY COMPANIES, THEIR AGENTS, OR EMPLOYEES.</u>

*Id.* The contract also provided that the contractor would secure and maintain during the course of the contract, at its own expense, without reimbursement certain minimum amounts of designated

types of insurance, and that Entergy would be named as an additional insured on those policies.

On August 24, 2006, while working at the Charity Boiler Plant, Rocky Martin sustained serious injuries, including burns, when he came into contract with an energized electrical panel. On June 5, 2007, Mr. Martin filed a suit for damages in Civil District Court for the State of Louisiana against "Leonard, last name currently unknown," an Entergy employee, and Entergy alleging that the accident occurred due to the negligence of Leonard and Entergy. Entergy answered the suit affirmatively pleading that it is "entitled to full defense and indemnity pursuant to the terms of the contract" between Entergy and Texas Surplus. Thereafter Mr. Martin amended the suit to name a number of additional defendants including the State of Louisiana through the Board of Supervisors for the Louisiana State University Agricultural and Mechanical College,[1] Pflueger Electric Company, Inc.,[2] New Orleans Medical Complex, Inc., GE Industrial Solutions, Inc. and Maverick Automation Solutions, Inc. On August 31, 2010, New Orleans Medical Complex, Inc. then filed a cross claim against Entergy which states in pertinent part:

> In the event that cross-claim defendant did not fulfill its obligation to obtain insurance in favor of cross-claimant, then cross-claimant calls upon Entergy Thermal, LLC to reimburse all defense fees and costs to provide a defense, and to fulfill any and all other obligations an insurer would have had in the event Entergy Thermal, LLC would have fulfilled its obligation to obtain insurance wherein cross-claimant was an additional named insured.

Doc. 10-12, p. 2.

On August 12, 2010, Entergy filed a "Complaint for Declaratory Judgment" in this Court in

---

[1] Mr. Martin alleged that the State of Louisiana owned the property located at 422 Freret Street in New Orleans.

[2] Mr. Martin alleged that Pfleuger Electric Company provided the electrical services for the State of Louisiana for the building located at 422 Freret Street.

which it sought "a declaration . . . that Rocky Martin d/b/a/ Texas Surplus has a duty to defend and indemnify Entergy Thermal for any liability it may have arising out of Rocky Martin's accident as the insurer of Entergy Thermal, which obligation arises because he failed to obtain the contractually-required liability insurance policies naming Entergy Thermal as an additional insured." In addition to a declaratory judgment, Entergy Thermal sought attorney's fees, including defense costs, from Rocky Martin d/b/a Texas Surplus, as well as "any and all damages that may result from Rocky Martin d/b/a Texas Surplus's breach of the Field Service Contract, and including any and all interest incurred, charged, due and owing." Doc. 1, p. 7-8.

Relying on *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), Defendant Rocky Martin filed a motion to dismiss this suit contending that the Court should abstain from exercising jurisdiction over this case or alternatively should stay the litigation pending the disposition of the earlier filed state court litigation.

## LAW AND ANALYSIS

In *Colorado River* the Supreme Court articulated an "extraordinary and narrow" exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them." *Id.*, at 813, 817, 96 S.Ct. 1236. However, the *Colorado River* abstention doctrine applies only "when there are parallel proceedings pending in federal and state court." *Brown v. Pacific Life Insurance Co.*, 462 F.2d 384, 395 n.7 (5th Cir. 2006). Suits are parallel when they have the same parties and the same issues. *Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006).

Rocky Martin and Entergy are the only parties in this suit. As for the state court suit, although Mr. Martin and Entergy are also both parties in that suit, there are also a number of other parties in that suit. Additionally, the scope of the state suit is far broader than that of the federal suit

3

whose sole claim involves Texas Surplus's alleged breach of its Field Service Contract with Entergy requiring it to 1) purchase certain minimum insurance; 2) name Entergy as an additional insured on that insurance, and 3) hold harmless and indemnity Entergy for any liability, costs, and claims arising from Texas Surplus's performance of or failure to perform the contract. The state court suit includes claims for personal injuries against a number of defendants, including Entergy, which urges as an affirmative defense an indemnity claim against Texas Surplus. Additionally, the state suit includes a cross-claim against Entergy for indemnity. Clearly the two suits do not share complete identity of parties and issues. Although the Fifth Circuit Court of Appeals has "recognized that 'it may be that there need not be applied in every instance a mincing insistence on precise identity' of parties and issues," the disparity between the parties and the issues in this case and that in the state court is simply too great to deem the suits parallel. *Brown v. Pacific Life Ins. Co.*, 462 F.3d at 395, n.7, quoting *RepublicBank Dallas Nat. Ass'n v. McIntosch*, 828 F.2d 1120, 1121 (5th Cir. 1987). The instant case is virtually indistinguishable from *Diamond Offshore Company v. A&B Builders, Inc.*, 302 F.3d 531 (5th Cir. 2002), overruled in part on other grounds *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 788 (5th Cir. 2009). In the *Diamond* case, Diamond Offshore Company ("Diamond") operated an offshore drilling platform upon which an employee of A&B Builders, Inc. ("A&B"), a contractor for Diamond, allegedly sustained injuries in the course of his employment aboard the platform. The injured employee filed suit in state court against several defendants, including Diamond, alleging negligence. Diamond, in turn, filed a claim against A&B demanding that it provide a defense and indemnity pursuant to a Master Service Contract between Diamond and A&B. When A&B failed to respond to Diamond's request for a defense and indemnity, Diamond hired counsel to defend it in the state court suit. Thereafter, Diamond filed suit

4

in federal court against A&B seeking declaratory relief, i.e., "a determination of its rights to indemnification, insurance, and a defense under the terms of the Master Service Contract; specifically, costs and attorney's fees incurred in defending the [state court] suit and bringing the [federal court] action." *Id.* at 537.  With respect to the breach of contract claim, the federal district court concluded that Diamond would be able to recover damages if A&B failed to obtain the insurance required by the contract but the court declined to exercise jurisdiction the breach of contract claim.  On appeal, the Fifth Circuit Court of Appeals concluded that "Diamond's federal case against A&B is clearly not parallel with [the] state court proceeding against Diamond, Shell, and others," and rejected "A&B's contention that the district court had discretion to abstain under the *Colorado River* doctrine." *Id*. at 540.  The Court knows of no basis upon which to distinguish *Diamond* from this case, and the defendants have not suggested any basis upon which to distinguish *Diamond*.  Based on the controlling precedent of *Diamond,* the Court concludes that because this suit and Mr. Martin's pending state court suit are not parallel and therefore the *Colorado River* abstention doctrine cannot apply in this case.  Accordingly, defendant's motion to dismiss is denied.

Furthermore, the Court denies defendant's request for alternative relief, i.e., a stay of this matter pending resolution of the state court proceeding.  Entergy's breach of contract claim presents a discrete issue which will not impact the parties in the state court suit, other than Rocky Martin.  Considering the discrete nature of the claims involved herein and this Court's "virtually unflagging obligation" to exercise jurisdiction, a stay of this matter at this time would be inappropriate.

Therefore, the motion to stay is DENIED.

New Orleans, Louisiana, this 1st day of December, 2010.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE